# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH HALL,<br><br>               Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>               Defendant. | 1:10cv0160 DLB<br><br>ORDER REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT |

## BACKGROUND

Plaintiff Elizabeth Hall ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on July 19, 2007, alleging disability since March 15, 2006, due to chronic fatigue syndrome and post-traumatic stress disorder ("PTSD"). AR 85-87, 97-104. After her application was denied initially and on reconsideration, Plaintiff requested a

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

hearing before an Administrative Law Judge ("ALJ"). AR 47-50, 54-58, 59. ALJ William C. Thompson, Jr., held a hearing on February 11, 2009, and denied benefits on July 13, 2009. AR 13-23, 25-44. The Appeals Council denied review on January 29, 2010. AR 1-4.

Hearing Testimony

ALJ Thompson held a hearing on February 11, 2009, in Stockton, California. Plaintiff appeared with her representative, Richard Hondo. Vocational expert ("VE") Susan Creighton-Clavel also appeared and testified. AR 25.

Plaintiff testified that she was 52 years old at the time of the hearing. AR 28. She graduated from high school and took a few junior college classes. Plaintiff is 5 feet, 9 inches tall and weighs 192 pounds. AR 29. She lives with her husband, who is disabled. AR 36.

Plaintiff last worked on February 15, 2006, as an agricultural inspector and secretary at the Department of Food and Agriculture. AR 29-30. She stopped working because she "just got too tired to work anymore" and it was very stressful. AR 32. Plaintiff explained that her main problem is chronic fatigue syndrome, for which she takes Wellbutrin and Provigil. AR 33. Initially, the Wellbutrin gave her energy, but it stopped working once it got into her system. AR 34. She also testified that she has been diagnosed with fibromyalgia. AR 34.

On a typical day, Plaintiff tries to do normal house cleaning, but never catches up. She sweeps and vacuums, very slowly, every two or three weeks. Plaintiff cooks once in a while and does laundry. AR 26. She also folds the clothes and unloads the dishwasher, but "at a much slower pace." AR 37. She drives and goes to the grocery store once a week. AR 37. Plaintiff is able to bathe and dress herself, though she does not take a bath as often as she should. AR 38.

When she gets tired, she takes a nap once or twice a day. AR 35. If she takes a long nap, which would be about five to six hours, she only takes one nap a day. AR 36. When she climbs the stairs in her house, she goes about halfway up and becomes out of breath. Her chest also becomes heavy and her legs feel like lead. AR 37.

Plaintiff believed that she could stand for less than 30 minutes before getting tired. AR 38. When she bends over a desk, her neck and shoulders hurt. AR 39. Plaintiff described the fibromyalgia pain as an aching, burning pain that is present all the time. The pain is worse when

she is stressed or when she has to bend over. AR 39. She thought that she could sit for about half an hour before needing to get up and stretch. AR 41-42.

Plaintiff takes many medications but suffers no side effects. She testified that her medications help, but not enough. Even though she takes Provigil for energy, she still needs to nap during the day. Plaintiff gets about nine to ten hours of sleep a night and then takes a nap around two or three in the afternoon. She stated that an average nap is six or seven hours and after dinner, she might watch a little television or read the paper before going back to bed for the night. AR 40-41. Plaintiff also has attention deficit disorder and has problems concentrating. Her mind drifts and she often has to watch something many times before understanding it. AR 41.

Medical Record

Plaintiff began seeing Ashok Rao, M.D., for depression and medication management in October 2006. She complained of being tired and described numerous stressors, including dealing with a spouse who has PTSD and multiple deaths in her family. She noted that her depression symptoms were somewhat relieved by her medications. On examination, Plaintiff was mildly anxious and her mood was congruent. Her memory was grossly intact and insight and judgment were fair. Plaintiff's speech was normal and her thoughts were linear and goal directed. Dr. Rao diagnosed bereavement, adjustment disorder with mixed features and depressive disorder not otherwise specified. He noted that her problems appeared to be related to her husband's PTSD and the deaths in her family. Her medications were changed and adjusted because Plaintiff was taking several stimulants and sedatives/antidepressants that may be worsening her symptoms. AR 183-185.

Plaintiff returned to Dr. Rao on December 27, 2006. She admitted that her depression symptoms were better, but she remained poorly motivated. Her chronic fatigue symptoms were not much improved. On examination, Plaintiff appeared better than her last visit and said that her mood was "better." Her memory was grossly intact and insight and judgment were fair. Dr. Rao diagnosed bereavement, adjustment disorder with mixed features and depressive disorder not

otherwise specified. Dr. Rao increased her Wellbutrin and added Elavil to help with her chronic fatigue symptoms. AR 179-182.

On April 30, 2007, Plaintiff saw Anita Prabhu, M.D., in follow-up for her physical problems. Plaintiff complained of increasing neck pain over the past few weeks that worsened with movement. On examination, Plaintiff was alert, anxious and in no acute distress. Her neck was supple with pain on side to side movement. She was diagnosed with depression/difficulty sleeping, hypothyroidism, and neck pain, likely musculoskeletal. Dr. Prabhu recommended conservative treatment for her neck, including Naprosyn and analgesic cream. AR 178.

On May 23, 2007, Plaintiff saw R. Mark Winkler, M.D., and complained that she took a cruise to Hawaii and now the "floor is moving." He diagnosed hypothyroid symptoms, vertigo and depression. He changed her antidepressant from Wellbutrin to Effexor. AR 157.

On June 14, 2007, Plaintiff saw Dr. Rao and complained of the same stressors. She reported that her depression was improving, but she was still having trouble sleeping. She stated that her chronic fatigue symptoms were the same. On mental status examination, Plaintiff was mildly anxious. She was oriented times three, her memory was grossly intact and insight and judgment were fair. Dr. Rao diagnosed adjustment disorder with mixed features and depressive disorder not otherwise specified. He noted that Plaintiff's problems appear to be related to her husband's PTSD, deaths in her family and possible depression with chronic fatigue syndrome. After trying numerous medications, Plaintiff reported improved symptoms on Effexor. AR 174-176.

Plaintiff returned to Dr. Winkler on July 10, 2007, and reported that her cramps and fatigue were worse on Effexor. Dr. Winkler changed her antidepressant to Lexapro. AR 156.

On August 31, 2007, State Agency physician K. J. Loomis, M.D., completed a Psychiatric Review Technique form. Dr. Loomis opined that Plaintiff's adjustment disorder was not severe. Plaintiff had mild difficulties maintaining concentration, persistence or pace, but no other limitations. AR 197-207. He noted that her mental status examinations were "almost normal." AR 208-209.

Plaintiff returned to Dr. Rao on September 14, 2007. She continued to complain of poor sleep related to her chronic fatigue symptoms and poor motivation. Her stressors were somewhat better. On examination, Plaintiff was mildly anxious, with linear and goal directed thought processes. Her memory was grossly intact and insight and judgment were fair. Dr. Rao diagnosed adjustment disorder with mixed features and depressive disorder not otherwise specified. He noted that after several medication changes, Plaintiff was partially responding to her current medication. AR 355-358.

On October 5, 2007, Plaintiff was examined by J. Martin, M.D., for complaints of chronic fatigue. She reported that she requires frequent naps and that she has to rest after performing simple activities. Plaintiff also reported minimal relief from medications. On examination, Plaintiff was overweight and seemed anxious and somewhat dysthymic. Plaintiff did not have difficulty getting on and off the examination table. She had full range of motion in all extremities and she was able to squat fully. Plaintiff's gait was normal and she could walk on her heels and toes. Plaintiff's tone was normal and she became "somewhat unsteady" when her eyes were closed. Strength and reflexes were normal. Dr. Martin diagnosed chronic fatigue, unsteadiness, not otherwise specified, and obesity/deconditioned state. Dr. Martin believed it would be beneficial to restrict Plaintiff from hazardous activities, but found no other restrictions. Plaintiff would likely benefit from weight reduction and Dr. Martin also suggested a psychological and rheumatological consultation. Dr. Martin believed that based on Plaintiff's subjective complaints, she "will have problems maintaining employment." AR 326-327.

On October 23, 2007, State Agency physician Sadda V. Reddy, M.D., opined that Plaintiff's physical impairments were not severe. AR 209.

On November 23, 2007, Plaintiff saw Dr. Winkler and reported that she has been "tired all the time" for several years. She also complained of frequent pain in her upper back and neck. Plaintiff appeared fatigued and depressed. She was tender over her trapezius deltoid. Dr. Winkler diagnosed chronic fatigue and immune dysfunction syndrome and fibromyalgia. AR 340.

Plaintiff returned to Dr. Winkler on March 8, 2008, and complained of ongoing fatigue and an inability to concentrate. She also reported being overwhelmed because both her husband

5

and her mother have serious medical conditions. On examination, her affect was flattened and she showed psychomotor retardation (very fatigued). Plaintiff also had multiple bilateral trigger points. Dr. Winkler diagnosed major depression in partial remission, chronic fatigue and immune dysfunction syndrome, fibromyalgia, attention deficit disorder and hypothyroidism. AR 339.

On March 18, 2008, State Agency physician Roger D. Fast, M.D., opined that Plaintiff's physical and mental impairments were not severe. AR 389-390.

On March 28, 2008, Dr. Winkler wrote a letter indicating that Plaintiff has been unable to pursue gainful employment since February 15, 2006. He explained that over the past 10 years, he has seen a progressive decline in her energy and physical well-being. He diagnosed (1) chronic fatigue and immune dysfunction syndrome with both Epstein Barr and Cytomegalivirus antibody positivity, fibromyalgia with episodic exacerbation of widespread pain, chronic anxiety disorder with PTSD, major depression, and attention deficit disorder. He believed that some of these problems "are serious enough to individually render Mrs. Hall unable to perform usual work duties." Moreover, the cumulative effect of the diagnoses make "it virtually impossible" for Plaintiff to pursue substantial gainful employment for the foreseeable future. AR 396.

In a separate questionnaire, Dr. Winkler opined that Plaintiff could sit for two hours in an eight hour day and stand/walk for up to one hour. Plaintiff would need to get up twice an hour. Plaintiff could lift and carry the pounds or less occasionally. She would also be moderately limited in the use of her upper extremities. Plaintiff's pain, fatigue and other symptoms would constantly interfere with her attention and concentration. Dr. Winkler opined that Plaintiff would be incapable of even a low stress job and could not work part time. AR 399-404.

On May 1, 2008, Plaintiff saw Dr. Rao and reported improved mood and minimal improvement in her symptoms of depression. She also said she was sleeping well but that her family-related stressors continued to affect her. Plaintiff was mildly anxious with linear and goal directed thought processes. Her memory was grossly intact and insight and judgment were fair. He diagnosed adjustment disorder with mixed features and depressive disorder not otherwise specified. Dr. Rao adjusted her medications. AR 432-434.

An EMG performed on September 3, 2008, was normal. AR 461.

On December 11, 2008, Plaintiff saw Deepak Dhawan, M.D., for a consultive examination at the request of her attorney. Plaintiff reported that she got laid off on February 15, 2006, and could not return to work because of chronic pain and fatigue. Plaintiff complained of pain in her upper back, neck, shoulders and thighs, constant fatigue, fibromyalgia and depression. On examination, Plaintiff walked with a normal gait and she was in no acute distress. There was paracervical tenderness noted in her neck. Motor strength was equal bilaterally and sensation was normal. Straight leg raising was negative and there was no focal tenderness of the back. Dr. Dhawan diagnosed chronic fatigue syndrome, neck pain, fibromyalgia, hypothyroidism and major depression. He opined that Plaintiff could not work. Dr. Dhawan noted that Plaintiff's complaints were subjective and that there was no definite objective evidence that could be provided for chronic fatigue syndrome and fibromyalgia. He also noted that he did not have any objective testing related to Plaintiff's neck pain to substantiate her symptoms. AR 447-449.

In a separate questionnaire completed on December 20, 2008, Dr. Dhawan opined that Plaintiff could sit for three hours out of an eight hour day and stand/walk for three to four hours. Plaintiff would need to get up every hour and wait an hour before sitting again. Plaintiff could occasionally lift and carry ten pounds or less and would have moderate limitations in the use of her upper extremities. Dr. Dhawan believed that Plaintiff was not capable of even a low stress job. AR 450-457.

On January 12, 2009, Plaintiff complained of left-sided flank pain, as well as neck and upper back pain. She reported that she was stiff but denied weakness or numbness. On examination, Plaintiff had full range of motion in her neck and mild tenderness in the bilateral trapezius. Plaintiff also had mild tenderness in the paraspinal, thoracic and lumbar regions of her back. She was diagnosed with chronic neck pain, likely musculoskeletal, chronic fatigue syndrome, depression, hypothyroidism and chronic back pain, likely musculoskeletal. Plaintiff was taking Tylenol and using analgesic cream. AR 463-465.

Plaintiff returned to Dr. Winkler on January 26, 2009, and complained of an ongoing imbalance and occasional episodes where her arms or legs "won't work." She also reported increased stress from caring for her elderly mother. Plaintiff's gait was within normal limits and

she had equal grip strength in both hands. She had the "usual" trigger points in her neck, back and extremities and she appeared fatigued. Dr. Winkler ordered an EMG and adjusted her medications. AR 458.

On September 18, 2009, Plaintiff saw Dr. Winkler and reported that she still had inadequate energy, both emotionally and physically, to "accomplish activities of daily living, much less gainful employment." Plaintiff appeared fatigued and yawned frequently. She had minimal muscle stiffness and there was no marked tenderness. Dr. Winkler noted that he disagreed with the ALJ's denial because disabling fatigue is primarily subjective in nature. As for her fibromyalgia, he noted that "her pain is real, but not severe enough to require narcotics or invasive treatments." AR 471.

Plaintiff returned to Dr. Winkler on November 9, 2009, to discuss her application for social security benefits. She complained of increased stiffness and aching in her muscles. On examination, Plaintiff had decreased range of motion in her neck and back, bilateral trigger points and marked paraspinal spasms and tenderness. He diagnosed fibromyalgia, depression, chronic fatigue and immune deficiency syndrome, and hypothyroidism. AR 470.

A November 21, 2009, sleep study showed mild sleep apnea. AR 476.

ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of chronic fatigue syndrome and obesity. Despite these impairments, he determined that Plaintiff could perform the full range of light work. Plaintiff could therefore perform her past relevant work as an administrative assistant and was not disabled. AR 18-21.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (chronic fatigue syndrome and obesity) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; but (4) can perform her past relevant work. AR 18-21.

Here, Plaintiff argues that the ALJ erred (1) by finding that Plaintiff did not have a severe mental impairment; (2) in analyzing the medical evidence; and (3) in rejecting Plaintiff's subjective complaints.

## DISCUSSION

A.   Severity of Mental Impairment

Plaintiff first argues that the ALJ erred by finding that her depression was not severe.

At step two, the ALJ determines whether a claimant has a severe impairment or combination of impairments. A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). SSR 85-28.

Here, the ALJ found that Plaintiff "has no restriction in activities of daily living, no difficulty in maintaining social functioning, only mild difficulty maintaining concentration, persistence or pace and no episodes of decompensation." AR 19. The ALJ relied on the August 2007 opinion of State Agency physician Dr. Loomis in making his determination. AR 19.

Plaintiff argues that this is incorrect mainly because the ALJ relied on the opinion of Dr. Loomis opinion over those of Dr. Winkler and Dr. Rao, Plaintiff's treating physicians.[2] While Plaintiff is correct that the opinions of treating and examining physicians are generally entitled to more weight than those of non-examining physicians, she fails to properly support her argument. Plaintiff points to Dr. Winkler's opinion that Plaintiff's symptoms would cause constant interference in maintaining concentration and attention, make her incapable of tolerating even a

---

[2] To the extent that Plaintiff suggests that the "existence" of depression diagnoses renders her depression severe, she is incorrect. Opening Brief, at 10. The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

low stress job, and exacerbate her physical pain and stiffness. Although Plaintiff states that Dr. Winkler was specifically describing limitations related to her depression, he was actually responding to a question related to Plaintiff's "experience of pain, fatigue or other symptoms." AR 401. Plaintiff's characterization of his opinion is therefore incorrect.

Plaintiff also points to Dr. Rao's Global Assessment of Functioning ("GAF") scores of 55 and 60, which, according to Plaintiff, suggest moderate limitations. GAF scores are not, however, directly correlative to severity assessments. *See* 65 Fed.Reg. 50746, 50765 (August 21, 2000). GAF scores consider non-medical factors which do not constitute work-related functional limitations, and therefore do not necessarily translate into functional limitations for the purpose of assessing Social Security disability. *See* 65 Fed.Reg. 50746, 50765 (Aug. 21, 2000) ("[GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings."). The ALJ's failure, then, to refer to Plaintiff's GAF score at step two is not error. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir.2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.").

Plaintiff also attempts to characterize Dr. Loomis's opinion as "wholly at odds with those of every other treating and examining source that evaluated the issue." Opening Brief. Contrary to Plaintiff's belief, the record showed mild symptoms of depression that were often alleviated to some extent with medication. AR 174, 179, 183-185, 339, 355, 432.

Finally, although the ALJ found that her depression was not severe, Plaintiff prevailed at step two because the ALJ determined that her physical impairments were severe. AR 18. Once a claimant prevails at step two, regardless of which condition is found to be severe, the Commissioner proceeds with the sequential evaluation, considering at each step all other alleged impairments and symptoms that may impact the ability to work. 42 U.S.C. § 423(d)(2)(B). Even though the ALJ found Plaintiff's mental impairment to be non-severe, he analyzed its impact on her RFC at a subsequent step. 20 C.F.R. § 404.1545(a)(2); *see also Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007). Specifically, the ALJ addressed the evidence related to her mental impairments in his step four analysis. AR 20-21. Therefore, the Court finds that, even if the ALJ

committed error at step two by not concluding that Plaintiff's mental impairment was severe, it was harmless and does not necessitate remand.

The ALJ's step two finding was supported by substantial evidence and was free of legal error.

B.      Analysis of Physicians' Opinions

Plaintiff next argues that the ALJ provided insufficient reasons for rejecting the opinions of Plaintiff's treating physician, Dr. Winkler, and consultive examiner, Dr. Dhawan.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.

*Pitzer,* 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews,* 53 F.3d at 1043; *Roberts v. Shalala,* 66 F.3d 179 (9th Cir.1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...." *Magallanes,* 881 F.2d at 752 (emphasis in original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

In his analysis, the ALJ adopted the opinions of Dr. Martin, who examined Plaintiff in 2007, and Dr. Loomis, the State Agency physician. AR 20. In doing so, he rejected the opinions of Dr. Winkler and Dr. Dhawan, who both believed that Plaintiff could not perform any work. AR 21.

       1.    *Dr. Winkler*

Dr. Winkler, Plaintiff's treating source, opined in March 2008 that Plaintiff could not work. AR 396, 399-404. The ALJ rejected this opinion first because Dr. Winkler "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." AR 21. While a treating source's opinion may be rejected for reliance on a claimant's discredited subjective complaints, the appropriateness of this rationale must be examined in light of the impairments at issue. In *Reddick v. Chater*, the Ninth Circuit discussed the subjective nature of chronic fatigue syndrome in concluding that the ALJ improperly rejected the treating source's opinion:

> We conclude that the ALJ's rejection of the opinions of Dr. Jacobson and Dr. Charney on the premise that they were based on the subjective complaints of the claimant is ill-suited to this CFS case. The ALJ's reasoning runs counter to the CDC's published framework for evaluating and diagnosing CFS. Chronic fatigue is defined as " self-reported persistent or relapsing fatigue lasting six or more consecutive months." Centers for Disease Control, The Chronic Fatigue Syndrome: A Comprehensive Approach to its Definition and Study, 121 Annals of Internal Medicine 954 (1994) (emphasis added).

> Although CFS is accompanied by symptoms such as body aches, low-grade fevers, memory problems, headaches, and extended flu-like symptoms, which Claimant manifested, the presence of persistent fatigue is necessarily self-reported. The final diagnosis is made "by exclusion," or ruling out other possible illnesses. Dr. Jacobson followed Claimant's progress for three and a half years, referred her to several specialists and conducted extensive lab testing to rule out other possible illnesses.

*Reddick v. Chater*, 157 F.3d 715, 726-727 (9th Cir. 1998).

As discussed below, the ALJ improperly discredited Plaintiff's subjective complaints. Therefore, the ALJ's rejection of Dr. Winkler's opinion based in part on his reliance on Plaintiff's subjective complaints is not valid.

The ALJ also failed to acknowledge Dr. Winkler's citation to objective evidence. For example, in March 2008, Dr. Winkler noted multiple bilateral trigger points and in January 2009, he noted the "usual" trigger points in Plaintiff's neck, back and extremities. AR 339, 458. He also noted on several occasions that Plaintiff appeared fatigued. AR 339, 340, 471. In his March 2008 questionnaire, Dr. Winkler listed "EBV titers positive for Early Antigen AB Viral Capsid Antigen AB, and Nuclear AG Antibody" and "CMV positive for IGG." AR 396. The ALJ wholly failed to discuss these laboratory and diagnostic test results.

The ALJ also rejected Dr. Winkler's opinion because, although he stated that Plaintiff was "'disabled,' it is not clear that the doctor was familiar with the definition of 'disability' contained in the Social Security Act and regulations and did not understand that the ultimate determination of disability is an administrative, not medical decision." AR 21. As Plaintiff points out, however, Dr. Winkler does not use the term "disabled" and instead explained that the individual and cumulative effects of Plaintiff's impairments render her unable to "perform usual work duties." AR 396. In the related questionnaire, he set forth his opinion as to the number of hours Plaintiff could sit, stand and walk and the amount of weight she could lift and carry. He also set forth his opinion as to Plaintiff's limitations in the use of her upper extremities and the impact of her impairments on attention and concentration. AR 399-402. These opinions are not the type of findings outside the realm of medical doctors and the ALJ's characterization of the opinions as such is incorrect.

2.   *Dr. Dhawan*

The ALJ set forth one reason for rejecting Dr. Dhawan's opinion. While the ALJ noted that the evidence was "certainly legitimate and deserves due consideration," he rejected the opinion simply because he questioned the context in which it was rendered. According to the ALJ, the examination was "not an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for this current appeal." Similarly, the ALJ noted that the "doctor was presumably paid for the report." AR 21.

The ALJ therefore admittedly noted that the report was "certainly legitimate and deserves due consideration," yet he summarily rejected it for reasons unrelated to the medical examination. The Ninth Circuit has held that "the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196, n. 5 (9th Cir. 2004) (*quoting Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995)).

Defendant attempts to support the ALJ's rationale by suggesting that questioning the context under which a doctor's report was obtained is permissible where there are additional reasons that support the ALJ's determination. *See eg. Saelee v. Chater,* 94 F.3d 520, 522-23 (9th Cir. 1996) (questioning a doctor's credibility because the opinion letter was solicited by claimant's counsel was valid where the opinion was intentionally worded ambiguously and varied from the doctor's own treatment notes). While this may be a correct statement of law, it does not apply to the facts of the ALJ's decision. The ALJ cited only the context of Dr. Dhawan's opinion in rejecting it, and Defendant's citations to other reasons for rejecting the opinion are impermissible post hoc rationalizations. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner).

Accordingly, the ALJ's rejection of the opinions of Dr. Winkler and Dr. Dhawan is not supported by substantial evidence and is not free of legal error.

C.   <u>Plaintiff's Subjective Complaints</u>

Plaintiff contends that the ALJ's finding that she was not credible is not supported by substantial evidence.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id*. Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id*.

In cases such as this, where subjective symptoms are relevant to the medical diagnosis, a claimant's accounts of pain must be carefully considered. *Reddick v. Chater*, 157 F.3d 715, 725-26 (9th Cir.1998) (discussing subjective complaints in context of diagnosis for chronic fatigue syndrome).

In rejecting Plaintiff's complaints, the ALJ first explained that her "treatment has been routine and conservative in nature." AR 20. He continued, "[t]he claimant has not generally received the type of medical treatment one would expect for a totally disabled individual." AR 20. "Despite complaints of pain, she has not taken any narcotic pain medication." AR 20.

The ALJ's rationale, however, misstates the totality of Plaintiff's symptoms and fails to "fully account for the nature of CFS and its symptoms." *Reddick*, 157 F.3d at 723. First, although Plaintiff complained of pain, the medical record and her testimony demonstrate that her main complaint is fatigue. Failure to take narcotic pain medication, then, does not necessarily undermine her testimony. *Id*. at 727 ("[T]he ALJ considered only pain and its effect on Claimant's activities and the potential relief by medication, rather than fatigue which is the basis of Claimant's disability claim.")

The ALJ's focus on conservative treatment also fails to recognize that "the CDC has made it clear that no definitive treatment for CFS exists." *Id; see also Nelson v. Astrue*, 610 F.Supp.3d 1070, 1077-1078 (C.D.Cal. 2009) (finding that ALJ erred in citing conservative treatment where the claimant suffered from chronic fatigue syndrome).

The ALJ next cited Plaintiff's daily activities, simply stating that she "has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR 20.  Again, the ALJ fails to consider Plaintiff's testimony in the context of chronic fatigue syndrome.  The ALJ earlier noted that Plaintiff's "activities of daily living are full except that [she] needs a lot of sleep and sometimes has trouble focusing of finishing tasks."  AR 20.  That Plaintiff tires easily, however, is consistent with chronic fatigue syndrome and is the main basis of her claim for disability.

Moreover, although the ALJ didn't fully explain what activities he relied upon, a review of her testimony reveals that she describes activities that are "fully consistent with CFS...[which] is characterized by periods of exacerbation and remission."  *Reddick*, 157 F.3d at 722 (internal citations omitted).  As in *Reddick*, Plaintiff testified that she could perform activities such as cleaning and cooking, but these "activities were sporadic and punctuated with rest."  *Id.* at 722.  Indeed, Plaintiff testified that she tries to do normal house cleaning, but this involves sweeping and vacuuming, very slowly, every two or three weeks.  AR 26.  Plaintiff cooks once in a while and does laundry, though she folds the clothes and unloads the dishwasher "at a much slower pace."  AR 26, 37.  Plaintiff goes to the grocery store only once a week, and though she is able to bathe and dress herself, she does not take a bath as often as she should.  AR 37, 38.  Plaintiff also naps once or twice a day, for hours at a time.  AR 35, 36.

Nor do Plaintiff's daily activities consume a substantial part of her day or require extended periods of concentration.  See *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir.2001).  Daily household chores and grocery shopping are not activities that are easily transferable to a work environment, "where it might be impossible to periodically rest or take medication."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).  The Ninth Circuit has repeatedly recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.  *Reddick*, 157 F.3d at 722; *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits).

For these reasons, the ALJ's analysis of Plaintiff's subjective complaints is not supported by substantial evidence and is not free of legal error.

D.    Remand

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." Id. (citation omitted); see also Varney v. Secretary of Health & Human Serv., 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Here, the Court finds that remand for an award of benefits is appropriate. The record has been fully developed and no useful purpose would be served by further administrative proceedings. Dr. Winkler's opinion, which was supported by objective evidence, as well as Dr. Dhawan's opinion and Plaintiff's testimony, demonstrate that the ALJ would have to find Plaintiff disabled. Accordingly, there are no outstanding issues that must be resolved before a determination of disability can be made.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is not based on proper legal standards. Accordingly, this Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social

Security AND REMANDS for payment of BENEFITS.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff, Elizabeth Hall, and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **December 8, 2010**                   _____/s/ Dennis L. Beck_____
                                                                 UNITED STATES MAGISTRATE JUDGE